UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
IKECHUKWU MBACHU, *et al.*,

                Plaintiffs,

              -against-

KRISTI NOEM, *et al.*,

                Defendants.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
25-CV-02134 (OEM)

ORELIA E. MERCHANT, United States District Judge:

Plaintiffs Ikechukwu Mbachu ("Ikechukwu"), Oluchi Mbachu ("Oluchi"), Chisom Mbachu ("Chisom") and Uchechukwu Mbachu ("Uchechukwu") bring this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06, against Defendants Kristi Noem, the former United States Secretary of Homeland Security; Kika Scott, the former Acting Director of the United States Citizenship and Immigration Services ("USCIS"); Ted H. Kim, the Associate Director of the USCIS Refugee, Asylum, and International Operations Directorate; and Pam Bondi, the former Attorney General of United States (collectively, "Defendants").[1]  *See* "Plaintiff's Original Complaint for Writ in the Nature of Mandamus and Violation of the Administrative Procedure Act," Dkt. 1 ("Complaint" or "Compl."). Plaintiffs seek an order from this Court directing Defendants to adjudicate Ikechukwu's Form I-589, Application for Asylum and for Withholding of Removal ("Form I-589" or "Asylum Application"). *Id.*

Before the Court is Defendants' fully briefed motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") for lack of subject-matter jurisdiction

---

[1] As Defendants are named in their official capacities, the successors of those Defendants who no longer hold their office are automatically substituted as a party. *See* FED. R. CIV. P. 25(d).

and 12(b)(6) ("Rule 12(b)(6)") for failure to state claims for which relief can be granted.[2]  For the following reasons, Defendants' Motion is granted.

**BACKGROUND**

### A. The Asylum Application[3]

Ikechukwu is a citizen of Nigeria and a resident of Queens County, New York.  Compl. ¶ 4.  He is the principal applicant of a Form I-589 filed on March 24, 2022.  *Id.*  Ikechukwu included his spouse, Oluchi, and his two children, Chisom and Uchechukwu, as derivative family members in his Form I-589.  *Id.* ¶¶ 4-7.  Oluchi, Chisom, and Uchechukwu are also citizens of Nigeria and residents of Queens County, New York.  *Id.*

On July 27, 2022, Plaintiffs Ikechukwu, Oluchi, Chishom, and Uchechukwu ("Plaintiffs") appeared for and completed their scheduled biometrics appointment with USCIS.  *Id.* ¶ 17.  Since that appointment, Defendants have not requested further information from Plaintiffs, nor have they scheduled the required asylum interview.  *Id.* ¶ 18.  Ikechukwu's Asylum Application remains pending, and Plaintiffs allege that "they are unable to commence their life in the U.S. without living in fear of being forced to return to Nigeria, where they will certainly be persecuted, tortured, and/or killed."  *Id.* ¶ 20.

---

[2] *See* Memorandum of Law in Support of Defendants' Motion to Dismiss, Dkt. 19-2 ("Motion" or "Mot."); "Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss," Dkt. 19-3 ("Opposition" or "Opp'n); Memorandum of Law in Support of Defendants' Motion to Dismiss, Dkt. 19-4 ("Reply").

[3] For the purposes of resolving the Motion, the Court assumes all factual allegations in the Complaint to be true and draws all reasonable inferences in favor of Plaintiff as the non-moving party.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

2

### B. The "Last In-First Out" Policy[4]

Under USCIS's "last in-first out" ("LIFO") scheduling system, which was reimplemented in January 2018 after previously being used for decades, the USCIS Asylum Division schedules recently-filed I-589s for interviews ahead of older ones. *See USCIS to Take Action to Address Asylum Backlog*, USCIS, https://www.uscis.gov/archive/uscis-to-take-action-to-address-asylum-backlog (last visited May 17, 2026); Declaration of Nashwati Nirahu ¶ 3, Dkt. 19-1 ("Nirahu Decl.").[5] LIFO was reintroduced to disincentivize the filing of frivolous applications submitted solely for the purpose of obtaining work authorization and security from removal. *See Affirmative Asylum Interview Scheduling*, USCIS, https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling (last visited May 17, 2026) ("Asylum Interview Scheduling").

Under LIFO, applicants are divided into three pools. First priority goes to applicants whose interviews were previously cancelled by either the applicant or USCIS. *See id.* Second priority goes to new applications pending for 21 days or less. *See id.* Third priority goes to those in the "asylum backlog" who are waiting for interviews, starting with the most recently added applicants. *See id.*; Nirahu Decl. ¶¶ 8, 11. Under a second track for interview scheduling, "USCIS assigns some of its asylum officers to complete affirmative asylum applications pending in the backlog, starting with the oldest applications and working forward. This permits some of the oldest pending

---

[4] Although the "last in-first out" policy is not referenced or otherwise relied upon in the Complaint, the Court may take "judicial notice of facts not subject to reasonable dispute, including those related to USCIS's asylum adjudication procedures, as set forth in documents from the agency's official website." *Konde v. Raufer*, 23-CV4265, 2024 WL 2221227 at *1 n.1 (S.D.N.Y. May 16, 2024) (citing *Kravitz v. Tavlarios*, 20-2579-cv, 2021 WL 5365582, at *3 (2d Cir. Nov. 18, 2021) ("District Courts may take judicial notice of facts 'not subject to reasonable dispute' when they 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" (quoting Fed. R. Evid. 201(b)(2)))).

[5] The Court considers the Declaration of Nashwati Nirahu for the matters of public record contained therein. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) ("We also take judicial notice of relevant matters of public record.).

applications to be completed in chronological order."  Asylum Interview Scheduling. Additionally, applicants may submit a formal request for expedited processing in emergency circumstances.  *See* Asylum Interview Scheduling; Nirahu Decl. ¶ 8.

## LEGAL STANDARD[6]

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  In evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).  When considering a Rule 12(b)(6) motion, the Court must "test, in a streamlined fashion, the formal sufficiency of the plaintiff's

---

[6] Defendants move to dismiss the Complaint under Rule 12(b)(1) in addition to Rule 12(b)(6), noting that "[s]everal courts have viewed a plaintiff's inability to establish the tripartite predicate for mandamus relief as a question of subject matter jurisdiction."  Mot. at 22 n.9.  Defendants thereby "submit that Rule 12(b)(1) is the appropriate vehicle for dismissal of the Mandamus Act Claim."  *Id.* (citing *H.M.G. v. Johnson*, 599 F. App'x 396, 397 (2d Cir. 2015)).  However, Defendants note that the Complaint must be "broadly construe[d] to assert a Mandamus claim under 28 U.S.C. § 1361."  *Id* at 22.  The Court declines to engage in such a broad construction, as the Complaint does not explicitly assert a claim for Mandamus Act relief, and Plaintiffs' Opposition does not address the standard for establishing a right to such relief.  *See generally* Compl.; Opp'n.  Accordingly, whether Plaintiff has stated an APA claim under Rule 12(b)(6) is the only relevant inquiry.

statement of a claim for relief without resolving a contest regarding its substantive merits." *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006).

## DISCUSSION

Plaintiffs seek to compel Defendants to adjudicate Ikechukwu's Asylum Application on the ground that the process has been unreasonably delayed in violation of APA Section 706(1). Compl. ¶¶ 29-31. Defendants argue that Plaintiffs' APA claim fails as a matter of law. Mot. at 16.

The APA requires that, "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Federal courts have the power to "compel agency action" that has been "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). To determine the reasonableness of the delay in processing an asylum application, the Court "look[s] to the source of delay – e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding," *Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 120 (2d Cir. 1999), and to the factors established in *Telecommunications Research and Action Center ("TRAC") v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984), *see Nat. Res. Def. Council, Inc. v. FDA*, 710 F.3d 71, 84 (2d Cir. 2013). The *TRAC* factors are:

> (i) the time agencies take to make decisions must be governed by a rule of reason;
> (ii) where Congress has provided a timetable, it may supply content for this rule of reason;
> (iii) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (iv) the effect of expediting delayed action on agency activities of a higher or competing priority;
> (v) the nature and extent of the interests prejudiced by delay; and
> (vi) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 51 (S.D.N.Y. 2020). A plaintiff need not "demonstrat[e] that all of these factors weigh in [their] favor" to prevail on an undue delay claim

5

under the APA. *Mu v. USCIS.*, 23-CV-02067 (HG), 2023 WL 4687077, at *4 (E.D.N.Y. July 22, 2023). Rather, the factors are "intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 80).

At the pleading stage, the Court's role is "not determining whether there has been an unreasonable delay, but rather, it is determining whether [Plaintiffs'] complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Kaur v. Mayorkas,* 22-Civ. 4514 (PAE), 2023 WL 4899083, at *5 n.6 (S.D.N.Y. Aug. 1, 2023) (quoting *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021)). The Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in Plaintiff's favor under the *TRAC* factors.

### 1. The First *TRAC* Factor: Rule of Reason

As for the first *TRAC* factor, whether "the time agencies take to make decisions [is] governed by a 'rule of reason,'" *TRAC*, 750 F.2d at 80, Defendants argue that the LIFO policy has been found to constitute a rule of reason by other courts. Mot. at 19 (collecting cases). Plaintiffs contend that the policy introduces "delays of such magnitude effectively prevent asylum applicants from ever securing an interview" and therefore cannot constitute a "rule of reason." Opp'n at 13.

Consistent with other decisions in this Circuit, this Court holds that Defendants' use of a LIFO scheduling system "to deter fraud and abuse by quickly disposing of unmeritorious applications, is an appropriate 'rule of reason.'" *Mu*, 2023 WL 4687077, at *4 (collecting cases). Plaintiffs do not allege any other cause for the delayed decision. The Court is sensitive to the fact that Plaintiffs have had to wait over four years for an adjudication of Ikechukwu's application. However, courts have declined to find that the first *TRAC* factor favors compelling adjudication of asylum applications where such applications have been pending for the same amount of time.

6

*See, e.g.*, *Liu v. USCIS*, 23-CV-2065 (RPK), 2024 WL 4436232, at *1, *3 (E.D.N.Y. Oct. 7, 2024) (dismissing an APA claim for an asylum application pending for four years); *Zheng v. Garland*, No. 22-CV-6039 (AMD), 2024 WL 333090, at *1, *6 (E.D.N.Y. Jan. 29, 2024) (over four years); *Hu v. Sessions*, No. 18-CV-2248, 2020 WL 7486681, at *1 (five years); *Ying Yu Liu v. Wolf*, No. 19-CV-410 (PGG), 2020 WL 2836426, at *1 (S.D.N.Y. May 30, 2020) (over four years); *see also Da Costa v. Immigr. Investor Prog. Off.*, 643 F.Supp.3d 1, 14 (D.D.C. 2022) ("Although no bright lines have been drawn in this context, district courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." (quoting *Mokkapati v. Mayorkas*, 21-cv-1195 (BAH), 2022 WL 2817840, at *6 (D.D.C. July 19, 2022))).

### 2.  The Second *TRAC* Factor: Congressional Timetable

The second *TRAC* factor provides that "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for [the first factor's] rule of reason." *TRAC*, 750 F.2d at 80. Congress has supplied a relevant timetable in 8 U.S.C. Section 1158(d)(5) ("Section 1158(d)"): absent exceptional circumstances, an initial interview or hearing "shall" be held no later than 45 days after the asylum application filing date, and a final adjudication "shall" be made within 180 days of filing.  8 U.S.C. §§ 1158(d)(5)(A)(ii)-(iii).  Defendants have far exceeded the statutory timetable with Ikechukwu's application.

However, Section 1158(d) bars private enforcement of these timelines and contains qualifying language as to their applicability, suggesting that Congress did not intend for the timelines to be mandatory.  *Xu*, 434 F. Supp. 3d at 53 ("This [asylum application] timetable, however, is not mandatory: Congress stated that it did not create any substantive or procedural

7

right to adjudication within any time period."); *Zhuo v. Mayorkas*, 23-cv-5416 (DLI), 2024 WL 4309232, at *4 (E.D.N.Y. Sep. 26, 2024) ("The qualifying phrase 'absen[t] exceptional circumstances' suggests that Congress intended that the timeline not apply while the USCIS is dealing with an exceptional level of asylum applicants." (quoting 8 U.S.C. § 1158(d)(5)(A)(ii))). This timeline also does not interfere with a finding that LIFO is a rule of reason. *See Jan v. Mayorkas*, 24-CV-1686 (LDH), 2025 WL 964092, at *4 (E.D.N.Y. Mar. 31, 2025) ("[T]he timetables contained in § 1158(d)(5)(A) do not interfere with finding that the LIFO rule provides a rule of reason, insofar as Congress's decision not to structure the statute as creating a procedural right or benefit to enforce the timetables rendered them non-binding."); *Zhuo*, 2024 WL 4309232, at *4 ("[T]he first and second TRAC factors support Defendants' position that the adjudication of asylum applications pursuant to LIFO is a rule of reason."). As such, the second *TRAC* factor does not favor granting relief to Plaintiffs.

### 3. The Third and Fifth *TRAC* Factors: Health, Welfare, and Other Interests

The third and fifth *TRAC* factors, which are often analyzed together, ask whether "human health and welfare are at stake" and examine the "nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80; *Qi v. USCIS.*, 23-CV-08843 (JLR), 2024 WL 2262661, at *6 (S.D.N.Y. May 17, 2024) ("Courts analyze TRAC factors three and five together, looking to the possible effects a delay has had on a plaintiff's health and welfare and to the nature and extent of the interests prejudiced by the delay." (quoting *Arabzada v. Donis*, 725 F. Supp. 3d 1, 16 (D.D.C. 2024)). Plaintiffs allege that, due to the delay in the adjudication of Ikechukwu's Asylum Application, "they are unable to commence their life in the U.S. without living in fear of being

forced to return to Nigeria, where they will certainly be persecuted, tortured, and/or killed." Compl. ¶ 20.  Defendants contend that such allegations do not favor granting relief.  Mot. at 20.

The hardships alleged by Plaintiffs are largely "inherent in the asylum application process; worthy applicants are not entitled to benefits until their applications have been assessed and approved." *Xu*, 434 F. Supp. 3d at 54.  Courts in this Circuit have held that similar allegations do not meet the standard of health and welfare being at stake.  *See, e.g.*, *Sheiner v. Mayorkas*, 21-CV-5272 (ER), 2023 WL 2691580, \*9 (S.D.N.Y. Mar. 29, 2023) ("[A]llegations of uncertainty and delay do not amount to the showing other courts have held meets the standard of human health and welfare being at stake."); *Fang v. Gray*, 23-CV-6886 (OEM), 2025 WL 296531, at \*5 (E.D.N.Y. Jan. 23, 2025) ("The Court is unable to evaluate Plaintiff's general statement of 'hardship and heartache' without more information or factual basis."); *De Oliveira v. Barr*, 19-CV-1508 (ENV), 2020 WL 1941231, at \*5 (E.D.N.Y. Apr. 22, 2020) ("The fact that the plaintiffs experience 'anxiety and emotional distress' could just as easily be true for every other noncitizen whose asylum application has been delayed.  Therefore, an order in favor of the plaintiffs would . . . result[] in no net gain.").  Further, Plaintiffs do not allege that they have attempted to use the administrative expedite request available for humanitarian emergencies.  *See Fang*, 2025 WL 29653, at \*6 (holding that the third and fifth TRAC factors weighed against the plaintiff where the court could not determine whether the plaintiff availed himself of USCIS's "expedition procedures").  Although Plaintiffs state in conclusory fashion that "there are no further administrative remedies available for Plaintiffs to utilize," Compl. ¶ 15, that statement is "insufficient for this Court to determine whether Plaintiff has availed himself of these expedition

procedures," *Fang*, 2025 WL 29653, at *6.[7]  Accordingly, the third and fifth *TRAC* factors do not favor Plaintiffs.

### 4.  The Fourth *TRAC* Factor: Consequences of Expediting Agency Action

As for the fourth *TRAC* factor, "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80, Defendants argue that "[r]equiring immediate adjudication would unjustifiably favor Plaintiffs' I-589 in a manner contrary to USCIS' prioritization of the newest applicants."  Mot. at 18.  In response, Plaintiffs contend that Defendants' Motion "does not provide sufficient information or evidence for this Court to weigh Defendants' interests, and in particular, the *effect of expediting delayed action on agency activities of a higher or competing priority*."  Opp'n at 15.

Plaintiff's argument is not persuasive.  Defendants engage in a thorough exploration of the LIFO system and how it furthers USCIS's interests.  *See* Mot. at 7-13.  That Defendants "do not provide any data as to where exactly the Plaintiffs fall[] in [the] 'line,'" Opp'n at 15, does not change that Plaintiffs fail to explain how "leap-frogging [Plaintiffs] to the front of the adjudication queue would be beneficial to USCIS," *Chen v. Mayorkas*, 736 F. Supp. 3d 151, 161 (E.D.N.Y. 2024).  Courts have routinely dismissed undue delay claims when the requested relief would "simply jump[] one plaintiff to the front of the line and push[] everyone else further back."  *Yang v. Houghton*, 21-cv-5485 (BMC), 2021 WL 5879033, at *1 (E.D.N.Y. Dec. 13, 2021); *see also, e.g.*, *De Oliveira*, 2020 WL 1941231, at *5; *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 224-25 (E.D.N.Y. 2021).  As such, the fourth *TRA*C does not favor Plaintiffs.

In sum, the *TRAC* factors do not favorably support Plaintiffs' claim for unreasonable delay. The Court therefore finds that Plaintiffs fail to state a claim under APA Section 706(1).

---

[7] Notwithstanding Plaintiffs' statements regarding administrative exhaustion, USCIS records indicate that Plaintiffs have not submitted an expedition request.  Nirahu Decl. ¶ 13.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion is granted. Accordingly, Plaintiffs' Complaint is dismissed without prejudice to refile if there is a continued delay and Plaintiffs are able to state additional facts or causes of action.

The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

/s/_____
ORELIA E. MERCHANT
United States District Judge

May 25, 2026
Brooklyn, New York